JUDGE KEENAN

10 CIV 7091

BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiff
ST. PAUL FIRE & MARINE INSURANCE CO.
355 Lexington Avenue
New York, New York 10017
(212) 983-8500



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ST. PAUL FIRE & MARINE INSURANCE CO.,

                *Plaintiff*,

-against-

FAIRLESS IRON & METAL, LLC,

                *Defendant*.
------------------------------------------------------------X

Case No.:

ECF CASE

**COMPLAINT**

    Plaintiff, ST. PAUL FIRE & MARINE INSURANCE CO. ("Plaintiff"), by and through its attorneys, Brown Gavalas & Fromm LLP, as and for its Complaint against defendant, FAIRLESS IRON & METAL, LLC ("Defendant"), hereby alleges as follows:

### JURISDICTION

1.     The Court has jurisdiction pursuant to 28 U.S.C. § 1333 because this is an admiralty or maritime dispute concerning the interpretation of a policy of marine insurance.

### NATURE OF THE ACTION

2.     This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and involves an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Plaintiff designates this claim as an admiralty or maritime claim within the meaning of Rule 9(h).

3.     Plaintiff seeks a declaration of its rights and other legal relations pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, in order to resolve an actual controversy

between the parties to this action, as is more fully described below.

## VENUE

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is a New York limited liability company in this District, Plaintiff is an authorized insurer in the State of New York with offices in this District and the underlying arbitration from which this coverage dispute arises is currently pending in this District.

## THE PARTIES

5. Plaintiff was and is a corporation duly organized and existing under and by virtue of the laws of the State of Minnesota with offices in New York, New York, and is an authorized insurer in the State of New York. Plaintiff's business involves, *inter alia*, issuing policies of marine insurance.

6. Upon information and belief, Defendant is a limited liability company duly organized and existing under and by virtue of the laws of the State of New York, with an office and place of business in New York, New York. Plaintiff's business involves, *inter alia*, chartering vessels to transport goods by sea.

## FACTUAL BACKGROUND

A. **The Policy**

7. On or about February 1, 2008, Plaintiff issued to Tube City, IMS Corporation a Charterers Legal Liability Policy of Insurance bearing policy number OL06400490 for the policy year of February 1, 2008 to February 1, 2009 (the "Policy").

8. Defendant is named as an additional insured under the Policy.

9. The Policy is a policy of marine insurance.

2

10. The Policy provides in relevant part:

> This insurance covers the legal and/or contractual liability of the Insured as Charterer (other than Bareboat Charterer) in respect of the vessel(s) insured hereunder for any loss, damage and/or expense, including but not limited to demurrage and/or removal of wreck and/or collision liability and/or any other consequential loss or damage, resulting from any accident in which said vessel may be involved.
>
> Including claims for Protection and Indemnity as defined in the SP-23 form of Protection and Indemnity Policy attached, but with the limitation clause therein deleted, but excluding all liability for loss of or damage to cargo carried aboard the vessel(s) insured hereunder.

11. The Policy covers legal and/or contractual liability incurred by the Defendant in its capacity as vessel charterer, other than bareboat charterer, including liability for demurrage, delay and/or lost time claims "resulting from any accident in which said vessel may be involved."

## B. The Vessel Charter and Voyage

12. Upon information and belief, on or about June 20, 2008, Defendant chartered the vessel M/V THOR DYNAMIC (the "Vessel") from owner Sangamon Transport Group ("Sangamon" or "Vessel owner") in order to transport a cargo of 36,000 metric tons of scrap steel from a port in Morrisville, Pennsylvania to a port on the Sea of Marmara, Turkey (the "Charter Party").

13. Upon information and belief, the cargo of scrap steel to be transported aboard the Vessel pursuant to the Charter Party was sold on behalf of the Defendant by Tube City, IMS Corporation to Icdas Celik Enerji Tersane ve Ulasim Sanayi A.S. ("Icdas") pursuant to a Scrap Metal Purchase Agreement.

14. Upon information and belief, the Vessel arrived at the discharge port in Turkey on

or about August 4, 2008, at which time discharge of the cargo was commenced.

15. Upon information and belief, discharge operations were completed on or about August 8, 2008.

16. Upon information and belief, on or about August 7, 2008, the Civil Court of First Instance of Biga, Turkey issued an Order directing the Karabiga Port Authority to arrest the Vessel. Pursuant to this Order, the Vessel was arrested and detained by Turkish authorities. Upon information and belief, this Order was issued as a result of a demand made by Icdas, the receivers of the scrap steel cargo.

17. Upon information and belief, on or about August 13, 2008, the Vessel was released from its arrest and detention by Turkish authorities.

18. Upon information and belief, as a result of this arrest and detention, the Vessel was delayed in departing from the discharge port for approximately five (5) and a half days.

## C. The Underlying Arbitration and Reservation of Rights

19. On or about November 7, 2008, Sangamon served a Demand for Arbitration on the Defendant pursuant to Clause 37 of the Charter Party. In the Demand for Arbitration, Sangamon seeks $524,621.76 from the Defendant for, among other things, damages Sangamon allegedly incurred as a result of the detention of the Vessel by Turkish authorities (the "Arbitration").

20. Thereafter, Defendant provided notice of Sangamon's claim and the Demand for Arbitration to the Plaintiff.

21. Defendant advised Plaintiff that the Vessel was detained by the Turkish authorities at the discharge port on "the grounds that the unloading operation resulted in dirt/dust discharged into the air and/or water."

22. On or about March 19, 2009, after conducting an investigation into the subject claim, Plaintiff issued a Reservation of Rights letter in connection with Sangamon's claim against the Defendant and the Demand for Arbitration under the Charter Party.

23. In its Reservation of Rights letter of March 19, 2009, Plaintiff advised the Defendant that the Policy would respond to any loss, damage, and/or expense resulting from an accident in which the Vessel may be involved. Plaintiff further advised the Defendant that it was unclear whether the Vessel was involved in an accident that would trigger coverage under the Policy for the demurrage, delay and/or time loss claim being asserted by Sangamon against the Defendant.

24. As a result, Plaintiff agreed to defend the Defendant against the claims asserted by Sangamon pursuant to its Reservation of Rights under the terms, conditions and limitations of the Policy and at law as fully set forth in its letter of March 19, 2009.

25. The Arbitration commenced by Sangamon is pending in New York, New York.

26. Plaintiff has provided a defense to the Defendant in the Arbitration pursuant to its Reservation of Rights.

27. On or about February 23, 2010, Plaintiff issued a letter to the Defendant stating that there still was no indication that Sangamon's demurrage, delay and/or lost time claims arose from an accident involving the Vessel that would be covered under the Policy.

28. On or about March 8, 2010, Defendant advised Plaintiff that it believed that Sangamon's demurrage, delay and/or lost time claims arising from the detention of the Vessel are covered by the Policy and advised that it disagreed with the Plaintiff's Reservation of Rights.

29. Prior to March 8, 2010, Defendant had not objected to Plaintiff's March 19, 2009 Reservation of Rights or the defense being provided to the Defendant thereunder.

30. Plaintiff continues to provide a defense to the Defendant in the Arbitration pursuant to its reservation of rights.

31. On or about May 12, 2010, Sangamon submitted its initial arbitration statement detailing its claims against the Defendant.

32. In its initial arbitration statement, Sangamon claims that the Defendant is liable for delay costs and expenses caused by the arrest of the Vessel.

33. In its initial arbitration statement, Sangamon claims that Defendant's receiver, Icdas, had the Vessel arrested and detained in Turkey due to quality claims concerning the cargo sold under the Scrap Metal Purchase Agreement.

34. In its initial arbitration statement, Sangamon specifically alleges that "[i]t is clear that the gravamen of the arrest is a quality claim respecting the scrap under the contract of sale." Sangamon alleges that the Petition submitted by Icdas in support of the arrest of the Vessel demonstrates that Icdas claimed against the Vessel and arrested her on account of specific quality claims that "clearly arise under the contract of sale."

35. Sangamon does not allege that the Vessel was or may have been arrested by the Turkish authorities on the grounds that the unloading operation resulted in dirt and dust being discharged into the air and/or water.

36. Whether the Vessel was arrested and detained by Turkish authorities as a result of (i) quality claims as stated by Sangamon or (ii) dirt and dust being discharged into the air and/or water during unloading of the scrap steel cargo as stated by the Defendant, there is no coverage under the Policy for the Sangamon's demurrage, delay and/or lost time claims arising from the arrest or detention of the Vessel because such claims do not result "from any accident in which said vessel may be involved."

## AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

37. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "36" as if fully set forth herein.

38. An actual case or controversy exists between Plaintiff and Defendant regarding whether there is coverage under the Policy for the claims against the Defendant by Sangamon arising from the Vessel's delay in leaving the discharge port in Turkey as a result of the Vessel's arrest and detention.

39. Plaintiff and Defendant require a determination from the Court of their rights and obligations under the Policy with respect to aforesaid claims against the Defendant in the Arbitration.

40. The Policy covers legal and/or contractual liability incurred by the Defendant in its capacity as vessel charterer, other than bareboat charterer, including liability for demurrage, delay and/or lost time claims "resulting from any accident in which said vessel may be involved."

41. The terms and conditions of the Policy do not cover all losses, damages and/or expenses relating to or arising out of claims for demurrage, delay and/or lost time. The liability for demurrage, delay and/or lost time must result from an "accident in which said vessel may by involved" pursuant to the terms and conditions of the Policy.

42. Sangamon's claims against the Defendant under the Charter Party for demurrage, delay and/or lost time arising out of the arrest of the Vessel in Turkey do not result from an "accident in which said vessel may by involved."

43. The arrest of the Vessel caused by a dispute over cargo quality is not an accident involving the Vessel that is covered by the terms and conditions of the Policy.

44. Alternatively, any alleged escape of dirt, dust and/or debris during the discharge of scrap metal cargo resulting in the arrest of the Vessel is not an accident involving the Vessel that is covered by the terms and conditions of the Policy.

45. As a result, there is no coverage under the terms and conditions of the Policy for Sangamon's claims against the Defendant for demurrage, delay and/or lost time arising out of the arrest and/or detention of the Vessel.

46. Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a declaration that there is no coverage under the terms and conditions of the Policy for Sangamon's claims against the Defendant for demurrage, delay and/or lost time arising out of the arrest of the Vessel.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

A. that this Court grant Plaintiff a judgment in its favor declaring that there is no coverage under the terms and conditions of the Policy for the claims by Sangamon against the Defendant for demurrage, delay and/or lost time arising out of the arrest and detention of the Vessel;

B. that this Court grant Plaintiff its costs, fees and disbursements in this proceeding; and

C. that this Court grant Plaintiff such other and further relief as is just and proper.

Dated: New York, New York
September 15, 2010

BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiff
ST. PAUL FIRE & MARINE INSURANCE CO.

By: _____
Michael P. Naughton (MN-6870)
Patrick R. O'Mea (PO-0424)
355 Lexington Avenue
New York, New York 10017
(212) 983-8500

TO: FAIRLESS IRON & METAL, LLC
1 Maiden Lane, 5th Floor
New York, New York 10038